## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **SANIA MIKHAIL aka JOURNEER ELYASS,** | ) ) ) | |
| 3173 Allen Street Falls Church, Virginia 22042 | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | CIVIL ACTION NO.:_____ |
| **POHANKA OF CHANTILLY, INC. dba POHANKA LEXUS OF CHANTILLY** | ) ) ) | |
| 13909 Lee Jackson Mem. Hwy Chantilly, Virginia 20151 | ) ) ) | |
| SERVE: Robert McKew 25260 Pleasant Valley Rd. Chantilly, Virginia 20152 | ) ) ) ) ) | |
| **Defendant.** | ) ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, your Plaintiff, SANIA MIKHAIL aka JOURNEER ELYASS (hereafter "Plaintiff"), by and through counsel, and files her Complaint against the Defendant, POHANKA OF CHANTILLY, INC. (hereafter "Defendant") on the following grounds:

## INTRODUCTION

1.      This is an action for sexual harassment and gender, national origin, and retaliatory discrimination pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991.

## JURISDICTION

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343.

3.      Defendant was an employer engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

4.      This Court has personal jurisdiction over the matter as the Defendant is a for-profit corporation with its Principal Office in Chantilly, Virginia.  At all times relevant, Defendant operated its business within the State of Virginia.

## VENUE

5.      Defendant operates its business within the Eastern District of Virginia.  All actions by the Defendant alleged herein occurred within the Eastern District of Virginia. Venue in this district is proper for the Defendant pursuant to 28 U.S.C. § 1391(b) & (c).

## THE PARTIES

6.      Plaintiff is a female residing in Falls Church, Virginia.  At all times relevant to this lawsuit, until her termination on February 6th 2012, she was employed by the Defendant.

7.      Defendant is a for-profit corporation with its Principal Office in Chantilly, Virginia that does business in the Eastern District of the State of Virginia and is subject to the jurisdiction of this Court. Defendant's registered agent, Robert McKew, may be served at 25260 Pleasant Valley Rd., Chantilly, Virginia 20152.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      Plaintiff has exhausted her administrative remedies against the Defendant. Plaintiff timely filed administrative charges of gender and national origin discrimination against

Defendant with the U.S. Equal Employment Opportunity Commission (EEOC), Washington Field Office, EEOC Charge No. 10D-2012-00058.

9.      On September 5th, 2018, Plaintiff received notice that the EEOC was administratively closing this charge and was dismissing the case accordingly. In its notice, the EEOC informed Plaintiff of her right to sue the Defendant within ninety (90) days.

10.      At all times herein, Plaintiff filed suit against the Defendant within 90 days of receiving notice of the dismissal of her claim and the right to sue from the EEOC.

## FACTS

11.      Defendant is an automotive dealership that offers new and used cars, trucks, and SUV's as well as performs auto repair, inspections, etc. Defendant employs individuals to manage the office, sell vehicles, and perform repairs and other automotive services.

12.      Defendant was the employer of Plaintiff at all times relevant to this Complaint.

13.      Plaintiff is an Egyptian female that was hired by the Defendant as a State Inspection Technician in December of 2010.

14.      Plaintiff kept the same title throughout her employment with the Defendant.

15.      Plaintiff was paid Fifty-Two Thousand dollars ($52,000.00) per year in her position.

### I. Harassment by Donald Miller

16.      Around early fall of 2011, Plaintiff's direct supervisor, Donald Miller, a Diagnostic Technician for the Defendant, began making unsolicited sexual advances toward the Plaintiff.

17.     Upon information and belief, Mr. Miller also once brought a gun to the Defendant's place of business and showed it to the Plaintiff as well as a picture of himself holding a rifle.

18.     Between October and December of 2011, Mr. Miller sent over one hundred (100) sexually explicit emails and text messages to the Plaintiff including a picture he took of the Plaintiff's backside without her knowledge or approval.

19.     These emails and text messages contained disturbingly grotesque pornography, including pictures, slideshows, and videos.

20.     At one point, Mr. Miller directly solicited the Plaintiff for sex, writing in a text message, "This could be you," as a caption to a photograph of two individuals having sexual intercourse.

21.     While on a business trip to New Jersey, Mr. Miller sent the Plaintiff a text message saying, "I have this room for three days […] you should come spend the night with me."

22.     Plaintiff found these actions extremely offensive and repeatedly pleaded with Mr. Miller to stop sending her these sexually explicit messages and emails.

23.     At no point was Plaintiff a willing recipient of these explicit messages and emails as she did not respond to the texts or emails and continuously objected to his sexual advances.

24.     After Mr. Miller grew tired of Plaintiff spurning his sexual advances, Mr. Miller wrote the Plaintiff up and involved Kevin Murray, Defendant's Service Manager.

**II. Harassment by Fred Earl**

25.     During the summer of 2011, Plaintiff became involved in a consensual sexual relationship with her coworker and Defendant's Service Advisor, Fred Earl.

26.     The relationship ultimately became toxic as Mr. Earl began abusing, controlling, and harassing the Plaintiff while at their home and at work.

27.     Mr. Earl would yell at the Plaintiff, call her a "bitch" among other names, and would object to her speaking with any male coworkers.

28.     On Friday, February 3rd, 2012, Mr. Earl bruised Plaintiff's arm by shutting his car window on it while they both were on a work break in the parking lot at the Defendant's location and after a heated argument.

29.     Mr. Earl only released her arm from the car window once Plaintiff stated that she was going to report his behavior to their manager, Mr. Murray.

30.     Mr. Earl was abusive and possessive on a daily or near-daily basis, the stress of which caused Plaintiff to become agitated, leading to crying episodes and other emotional outbursts while at work, for which she was reprimanded at least once.

31.     On one occasion, Plaintiff had to leave work early to go home because she was so emotionally distraught over her treatment by Mr. Earl.

### III. Harassment, Actions, and Inactions by Defendant's Service Manager, Kevin Murray

32.     Since the early fall of 2011, Plaintiff sought assistance from Mr. Murray regarding Mr. Miller and Mr. Earl's actions, complaining and voicing her concerns on numerous occasions.

33.     Plaintiff reported Mr. Miller's actions to Mr. Murray and showed Mr. Murray all the text messages and emails containing pornography that Mr. Miller had sent her.

34.     Mr. Murray advised Plaintiff that she should not yet report Mr. Miller to the Human Resources or act upset as to ensure that together they could gather enough evidence to make a case against Mr. Miller.

35.     Mr. Murray promised the Plaintiff that once they gathered enough evidence, he would take the appropriate action regarding Mr. Miller's employment with the Human Resources Department.

36.     Mr. Murray portrayed himself as a friend to the Plaintiff and implied that she should trust him to handle the situation.

37.     In spite of the enormous volume of text messages and emails from Mr. Miller to the Plaintiff, Mr. Murray refused to take any actions regarding Mr. Miller's employment.

38.     Upon information and belief, Plaintiff had also complained to Mr. Murray regarding Mr. Earl's actions multiple times.

39.     On one occasion, shortly after Mr. Earl and the Plaintiff's former husband had a confrontation at the Defendant's place of business, it was the Plaintiff that was counseled for bringing her personal affairs into the workplace, even though she was not responsible for the behavior of Mr. Earl or her husband.

40.     After Plaintiff and Mr. Earl had the altercation in the Defendant's parking lot on February 3rd, 2012, Mr. Murray listened to Mr. Earl's narrative of events, but did not give credence or allow Plaintiff to explain her version of the incident.

41.     Additionally, Mr. Murray began yelling at the Plaintiff after she complained that he would not allow her to explain her side of the story and was always taking Mr. Earl's side.

42.     Despite being aware of Mr. Earl's abusive and harassing behavior, Mr. Murray repeatedly threatened Plaintiff with termination if she made reports to Human Resources or the police or sought a protective order against Mr. Earl.

43.     Upon information and belief, Mr. Earl was not suspended or reprimanded by Mr. Murray for any of his behavior even though Mr. Murray was clearly aware of their volatile relationship between the Plaintiff and Mr. Earl.

44.     Shortly after seeking assistance from Mr. Murray, Plaintiff realized that Mr. Murray was manipulating her to ensure that she would not report the sexual harassment and that he had no intention of addressing any of the misconduct by Mr. Earl or Mr. Miller either personally or through Human Resources.

45.     Mr. Murray responded by saying that if she complained to Human Resources that they would fire her for "being a troublemaker" and "remember that [Mr. Moultrie] is white."

46.     Upon information and belief, this refusal on behalf of Mr. Murray to take disciplinary action against a male employee was not uncommon as Plaintiff had previously filed a complaint of harassment regarding conduct by another one of Defendant's employees, a service technician named Jeff Hipsley (and Mr. Miller) back in March of 2011.

47.     In that instance, Plaintiff had alleged to Mr. Murray and Mr. Moultrie that Mr. Hipsley had made inappropriate comments towards her and that along with Mr. Miller, they would look at pornography on a work computer in a common area of the maintenance shop. Both of which greatly offended the Plaintiff.

48.     The only investigatory steps that the Defendant took after the allegations was to interview Mr. Hipsley about the alleged behavior and failed to look at the computer's hard drive or the internet search history, essentially ignoring the Plaintiff's complaints, dissuading the Plaintiff from filing a formal complaint of harassment and failing to take the necessary steps to address her concern.

49.     Additionally, Plaintiff was in fear of being fired if she formally reported any type of sexual harassment as Mr. Murray had threatened her numerous times about terminating her employment if she made any reports and, upon information and belief, after Plaintiff's relationship with Mr. Earl began, Mr. Murray himself would ask the Plaintiff about her sex life and proposition her.

50.     On one occasion Mr. Murray asked the Plaintiff, "If [she] performed oral sex on Mr. Earl?" and stated that "If [she] does, that [she] could provide oral sex to [him] too."

51.     Plaintiff confronted Mr. Murray and stated that she would go to Human Resources and report everything that had occurred with him, Mr. Earl, and Mr. Miller to Doug Moultrie, Defendant's Service Director.

52.      In response Mr. Murray would tell her to "shut up and keep quiet," that if she complained to Human Resources about Mr. Miller's actions, he would side with Mr. Miller, and that if she sought a protective order or other legal remedies against Mr. Earl, Plaintiff would never be able to get her child back from state custody.

### IV. Plaintiff's Termination of Employment

53.     Despite Mr. Murray's threats, Plaintiff eventually complained to Mr. Moultrie about the assault by Mr. Earl on February 3rd, 2012 and about the offensive conduct by Mr. Miller and Mr. Murray.

54.     Without care for Plaintiff's complaint and physical proof of harm, Mr. Moultrie refused to take any action towards Mr. Earl, address the alleged abusive and harassing behavior, or to ensure Plaintiff's safety in the workplace. In fact, Mr. Moultrie only addressed the Plaintiff and told her to "keep her personal affairs out of the workplace."

55.     Rather than allowing Plaintiff to explain what had happened between herself and Mr. Earl, or do any investigative work, Defendant suspended the Plaintiff.

56.     Plaintiff did return to work a couple hours later after she apologized to Mr. Murray for being upset and asked if she could finish her shift.

57.     Two days later, however, Defendant still decided to terminate the Plaintiff.

58.     Upon information and belief, Mr. Earl, Mr. Miller, nor Mr. Murray were ever reprimanded by Mr. Moultrie for any of their behavior and bad acts in the workplace.

59.     Throughout late 2011 and extending well after her termination, Plaintiff suffered severe mental anguish and distress due to her constant sexual harassment, discrimination, and loss of employment by the Defendant.

## CLAIMS FOR RELIEF

### Count I

*Gender Discrimination and Sexual Harassment in Violation of Title VII*
*of the Civil Rights Act of 1964,*
*42  U.S.C. § 2000e-2*

60.     Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

61.     Defendant's conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, which makes it unlawful to harass and discriminate against employees on the basis of their sex.

62.     Defendant discriminated against Plaintiff in violation of Title VII when her direct supervisor, Donald Miller, sexually harassed her by sending her unwelcomed sexually explicit text messages and emails and when Defendant failed to provide Plaintiff any remedies or take

disciplinary action upon knowledge of Mr. Miller's behavior which created a hostile work environment.

63.     Defendant also discriminated against Plaintiff in violation of Title VII by failing to provide Plaintiff any remedies upon knowledge of Mr. Earl's abusive and controlling behavior and by reprimanding the Plaintiff for all altercations with Mr. Earl and refusing to take any disciplinary action against Mr. Earl for creating a hostile work environment.

64.     Defendant discriminated against Plaintiff in violation of Title VII when its Service Manager, Kevin Murray, sexually harassed her by inquiring about her sex life with Mr. Earl and propositioning that she perform oral sex on him, by threatening to fire the Plaintiff if she made reports of harassment to Human Resources or the police, and by the Defendant failing to provide Plaintiff any remedies or take disciplinary action upon knowledge of Mr. Murray's behavior which helped create a hostile work environment.

65.     Defendant discriminated against Plaintiff in violation of Title VII when its Service Director, Doug Moultrie, and its Service Manager, Kevin Murray, reprimanded, suspended, and terminated the Plaintiff for actions and altercations involving her male counterparts Mr. Earl, Mr. Miller, and Mr. Murray but failed to take any disciplinary actions against them upon knowledge of the incidents.

66.     As a result of Defendants' discriminatory actions, Plaintiff has suffered lost compensation, diminished earning capacity, humiliation, mental anguish and extreme emotional distress.

67.     Defendant's discriminatory conduct, in violation of Title VII, has caused the Plaintiff to suffer severe mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.

68.     Defendants engaged in discriminatory practices maliciously and with reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

## Count II
*National Origin Discrimination in Violation of Title VII*
*of the Civil Rights Act of 1964,*
*42 U.S.C. § 2000e-2*

69.     Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

70.     Defendant has engaged in intentional national origin discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, reduction in pay, changes in work conditions, and Plaintiff's termination.

71.     Defendants' conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, which makes it unlawful to discriminate against employees on the basis of their national origin.

72.     Defendant has engaged in intentional national origin discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, reprimanding the Plaintiff instead of her counterparts and her termination as stated previously.

73.     As a result of Defendants' discriminatory actions, Plaintiff has suffered lost compensation, diminished earning capacity, humiliation, mental anguish and extreme emotional distress.

74.     Defendants' discriminatory conduct, in violation of Title VII, has caused the Plaintiff to suffer severe mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.

75.     Defendants engaged in discriminatory practices maliciously and with reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

**Count III**
*Retaliatory Discrimination in Violation Title VII*
*of the Civil Rights Act of 1964,*
*42 U.S.C. § 2000e-2*

76.     Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

77.     Defendants' conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), which makes it unlawful to discriminate or take adverse actions against employees who oppose any practice that is unlawful under Title VII.

78.     Defendant retaliated against Plaintiff in violation of Title VII when she first raised her concerns of discrimination and sexual harassment and threatened to report the same to Human Resources and/or the police, by the Defendant creating a hostile work environment for the Plaintiff which included, but was not limited to, reprimanding her and not any male associates, threatening to fire her if she reported sexual harassment or actions to Human Resources or the police, suspending her for the altercation with Mr. Earl, and terminating her two days later without taking any disciplinary actions against Mr. Earl, Mr. Miller, or Mr. Murray after Plaintiff reported their behavior.

79.     As a result of Defendant's retaliatory actions, Plaintiff has suffered lost compensation, diminished earning capacity, humiliation, mental anguish and extreme emotional distress.

80.     Defendant's retaliatory conduct, in violation of Title VII, has caused the Plaintiff to suffer severe mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.

81.     Defendant engaged in retaliatory practices maliciously and with reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

## DAMAGES

82.     Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

83.     As a result of the Defendant's violations of the above-stated federal statutes, Plaintiff seeks back pay, including wages and benefits, front pay, including benefits, equitable relief, compensatory and punitive damages, liquidated damages, expert witness fees, taxable costs of court, pre-judgment interest, and any other relief as the Court deems appropriate under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment as follows:

a.  That the Court grant Plaintiff compensatory damages in the amount of Three-Hundred Thousand dollars ($300,000.00) for Defendant's unlawful practices against her, including but not limited to compensation for emotional distress, back and front pay, benefits and all other emoluments of her position;

b.  That the Court grant Plaintiff punitive damages;

c.  That the Court grant Plaintiff expenses of litigation, pre- and post- judgment interest

at the legal rate on damage as appropriate, and reasonable attorneys' fees, pursuant to

Title VII and 42 U.S.C. § 1988;

d.  That the Court grant Plaintiff all other relief the Court deems just and proper.


### JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.


Dated:                                                      Respectfully Submitted,
                                                            **SANIA MIKHAIL** aka
                                                            **JOURNEER ELYASS**
                                                            By Counsel


**FIRSTPOINT LAW GROUP, P.C**.


_____/S/_____
Katherine Martell, VSB# 77027
10521 Judicial Drive, Suite 300
Fairfax, VA 22030
Tel: 703-385-6868
Fax: 703-385-7009
kmartell@firstpointlaw.com
*Counsel for Plaintiff*